IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| J.T.M., Children's Legal Center, on behalf of themselves and all others similarly situated,<br><br>      Plaintiffs,<br><br>      v.<br><br>Alejandro Mayorkas, Secretary of Homeland Security; Tae D. Johnson, Acting Director U.S. Immigration and Customs Enforcement; John Does 1-10.<br><br>      Defendants. | Case No. _____<br><br>**Jury Trial Demanded** |

## CLASS ACTION COMPLAINT

Plaintiffs, by their attorneys, Seyfarth Shaw LLP, allege as follows:

## INTRODUCTION

1. Plaintiffs bring this action to redress Defendants' violation of the rights of a class of individuals in removal proceedings under the Fourth and Fifth Amendments of the United States Constitution and Defendants' arbitrary and capricious actions in violation of the Fourth Amendment, Fifth Amendment, and the Administrative Procedures Act, 5 U.S.C. § 500, *et seq*.

2. In 2006, U.S. Immigration and Customs Enforcement ("ICE") promulgated a memorandum regarding confiscation of government-issued documents held by persons in removal proceedings.

3. The memorandum purports to give certain ICE officers discretion to retain such documents held by individuals in removal proceedings regardless of whether the holder of the document is legitimately entitled to the documents.

77200182v.8

4. ICE's policy and the standard-less implementation of it by ICE officers place extreme burdens on individuals in removal proceedings, including imposition of additional obstacles to obtaining benefits (such as employment authorization, public education, and other public benefits) and relief to which they otherwise would be entitled.

5. Additionally, the policy and its implementation impose additional costs burdens on organizations, including Plaintiff Children's Legal Center, in connection with their representation of individuals in removal proceedings because they force CLC to undertake additional work in order to obtain original or duplicate documents that have been seized by ICE.

## JURISDICTION AND VENUE

6. Jurisdiction lies with this Court under 28 U.S.C. § 1331 because Plaintiffs allege violations of federal law.

7. Venue is proper under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claim occurred in the Northern District of Illinois. Additionally, Defendants are officers of the United States, the action does not involve real property, and Plaintiff CLC resides in this District.

## PARTIES

8. Plaintiff Children's Legal Center (CLC) is an organization dedicated to providing free legal services and representation to children in the immigration process. Its services cover family members as well, since children are safe only when they have a parent or caregiver that is able to provide safety for them. CLC provide holistic services to clients through its partnerships, including securing access to legal services, mental health services and housing.

9. Plaintiff J.T.M. is a resident of Granton, Wisconsin and is currently in removal proceedings.

10. Defendant Alejandro Mayorkas is the Secretary of Homeland Security

77200182v.8

11. Defendant Tae D. Johnson is Acting Director of ICE.

12. Defendants John Does 1-10 are ICE agents and/or contractors who have confiscated and refused to return Plaintiffs' documents pursuant to ICE policy. The identities of John Does 1-10 are not currently known to the Plaintiffs, but are expected to be identified through discovery in this matter.

## FACTUAL BACKGROUND

### The Torres Memorandum

13. In July 2006, John Torres, then-Acting Director of U.S. Immigration and Customs Enforcement issued a memorandum entitled "Confiscation and Return of Original Documents." A copy of the memorandum is attached as Exhibit A.

14. The Memorandum notes that when individuals are placed in removal proceedings, ICE typically confiscates identification documents. Additionally, it sets forth guidelines to determine whether and when to return the documents.

15. The Memorandum provides that in making the return determination, the ICE officer has to consider whether the individual in question may legally possess the document and whether ICE has an operational need to retain it. For documents legally possessed by aliens, the Memorandum states that the determination with respect to returning the document should turn on "the alien's stated need for the document and whether release of the document will compromise ICE operations."

16. The Memorandum further provides that for all individuals who are not Lawful Permanent Residents (LPRs), ICE "may retain domestically issued government documents … at [its] discretion" on the basis that "unlawful possession of such documents" gives the holders "the appearance of legitimacy."

77200182v.8

17. However, the Memorandum does not provide details on the exercise of discretion and does not limit that discretion to unlawfully held documents.

## Subsequent Events

18. In the first decade following the issuance of the Memorandum, it played little role in removal proceedings, as ICE generally returned identification documents to non-detained individuals, either of its own accord or upon request.

19. However, in or about 2018 or 2019, ICE began to strictly follow the directives of the Memorandum, illegally retaining valid identification documents lawfully possessed by persons who were in removal proceedings which in turn imposed impermissible burdens and barriers for individuals in removal proceedings.

20. Under ICE's current procedures, it may indefinitely hold valid documents belonging to individuals in removal proceedings based on the perfunctory conclusion that it has an operational need to do so.

21. Thus, ICE has held and continues to hold identification documents for aliens in removal proceedings who were lawfully permitted to have such documents without valid justification for doing so.

22. This unlawful holding of the aliens' property violates the aliens' constitutional right to be free from unreasonable seizures of property and it has impeded their access to federal, state, and local government benefits to which they are entitled but for which the documents must be provided.

23. Government benefits, such as work authorization, are critical for the individuals seeking asylum to provide for themselves, their families, and to take root in the U.S. Without work authorization, aliens in removal proceedings are dependent on family, friends, and aid agencies, a burden that would not exist if they were able to timely obtain work authorization.

77200182v.8

24. On April 30, 2019, a CLC client (who is a citizen of Honduras) entered the United States at the San Ysidro Port of Entry, after being placed in Migrant Protection Protocols (MPP). At that time, ICE confiscated her birth certificate, her children's birth certificates and her consular ID. These are all documents which the client was lawfully entitled to possess.

25. The client subsequently applied for asylum and was eligible for work authorization on August 1, 2020.

26. On September 18, 2020, United States Citizenship and Immigration Services ("USCIS") denied the work authorization application for lack of government identification.

27. CLC was eventually able to obtain a replacement from the Honduran Consulate of the consular ID that was confiscated by ICE. This was submitted to USCIS in connection with the work authorization application on January 27, 2021.

28. The initial denial required that CLC expend resources to obtain a copy of the consular ID. In fact, in the summer 2020, faced with increasingly frequent instances in which its clients' documents had been seized and had not been returned, CLC needed to hire a social worker to assist clients with obtaining documents for their immigration applications, file police reports when victimized, and sign up for benefits. In the summer of 2020 CLC paid the social worker $4,133.55. In 2021, CLC paid the social worker $22,218.50. As a result of clients' documents being confiscated, a significant portion of the social worker's time, as well as that of CLC staff attorneys' time has been spent helping clients make appointments with consulates and writing individualized client letters to the consulates to obtain appointments. These expenditures of time and money would be unnecessary if ICE had returned the clients' documents, as it was required to do by law.

5

29. J.T.M. is married and has four children. He fled Mexico because 2 cartels entered J.T.M.'s hometown in a rival gang war, kidnapping and killing the inhabitants.

30. J.T.M. entered the United States at the El Paso, Texas Port of Entry on September 26, 2019. At this time, unknown agents or contractors of ICE confiscated his birth certificate and consular identification.

31. J.T.M. and his family are clients of CLC. With CLC's assistance, J.T.M. applied for asylum for himself and his children on December 7, 2020. Those claims are pending in the Chicago Immigration Court and J.T.M. is awaiting a Master Calendar Hearing.

32. As a result of his asylum application, J.T.M. was eligible for work authorization on June 12, 2021. Under the applicable rules he would have been permitted to submit his application on May 13, 2021.

33. However, his application was incomplete, such that he could not submit it, because he lacked any passport or consular identification and he was unable to timely obtain a replacement passport or consular identification because there is no Mexican Consulate near his home in Wisconsin. J.T.M. had to travel to the Mexican Consulate in Minnesota to obtain his passport.

34. J.T.M. was finally issued his passport on August 17, 2021 and Children's Legal Center is working to finalize forms and submit the application for work authorization.

35. This delay caused J.T.M. significant hardship in that he could not support his wife and family. J.T.M., his wife and his children were forced to reside with his father-in-law who is a United States Citizen and provided the family with food and shelter.

36. Without work authorization, J.T.M. could not provide for personal expenses such as visits to doctor's offices. Further, J.T.M. initially did not enroll his children in school because

77200182v.8

he was unable to afford a doctor's visit for the required physical examinations. Although J.T.M.'s children have since been enrolled school, the school continually provides notice to J.T.M. that the children need physical exams by a doctor. In addition, J.T.M.'s children are from Mexico and are unaccustomed to the cold weather experienced in Wisconsin where they now reside. Thurs, during the winter the children have experienced seasonal sickness such as the flu. The children have had fevers and symptoms but J.T.M. and his wife cannot afford to take their children to the doctor when they are sick. Additionally, without work authorization, J.T.M. cannot afford other basic personal items such as clothing and school supplies for his children

37. The harm inflicted by ICE's improper seizure and retention of property is not limited to the individual Plaintiffs. Indeed, the CLC and other similar agencies must regularly expend additional resources that they would not otherwise expend as a result of this policy.

38. For example, CLC's employees must spend additional time and resources seeking return of documents that should already have been returned. This limits CLC's ability to serve additional clients who otherwise would qualify for CLC's services.

## CLASS ALLEGATIONS

39. Plaintiffs bring these claims on behalf themselves and of all others similarly situated. This treatment is appropriate because Plaintiffs meet the requirements of Fed. R. Civ. P. 23.

40. Plaintiffs propose the following three subclasses:

   a. All individuals seeking asylum in the United States of America who are in removal proceedings and who have been unable to submit complete applications for work authorization because ICE has retained their identification documents;

   b. All individuals seeking asylum in the United States of America who are in removal proceedings and whose work authorization applications have been denied or delayed due to a lack of identification documents, provided that ICE has retained the identification documents.

7

   c. All non-profit agencies located in the United States of America that have expended resources assisting individuals in either of the preceding subclasses.

41. ICE's policy applies to all non-detained individuals seeking asylum in removal proceedings. Accordingly, the classes are sufficiently numerous that joinder is impracticable.

42. Similarly, there are questions of law and fact that are common to the class. In particular, whether ICE has discretion to indefinitely hold identification documents legally possessed by their bearers, whether the lack of criteria regarding retention is unreasonable, and whether the lack of criteria means that ICE's determinations are arbitrary and capricious.

43. The claims of the proposed class representatives are typical of the claims of the class because the representatives have suffered similar harm from the implementation of the Memorandum, including inability to apply for work authorization as permitted by law and denial of otherwise valid applications of authorization.

44. The proposed class representatives will fairly and adequately protect the interests of the class because ICE has acted similarly with respect to all class members and because Plaintiffs are not subject to unique individualized defenses that would destroy commonality or typicality.

45. In addition, certification is appropriate under multiple subsections of Fed. R. Civ. P. 23(b).

46. Certification is proper under Fed. R. Civ. P. 23(b)(1) because "inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class," in particular with respect to document retention determinations. If each class member were to bring individual claims, ICE might face a host of incompatible requirements for adjudicating document return requests.

47. Certification is proper under Fed. R. Civ. P. 23(b)(2) because ICE has acted based on the Memorandum, which applies generally to the class. Accordingly, class-wide injunctive relief is appropriate to remedy the unlawful actions.

48. Certification is proper under Fed. R. Civ. P. 23(b)(3) because there is a question of law common to class members—chiefly whether ICE's policy of identification document seizure violates the Fourth Amendment. Litigating this issue through a class action is vastly superior in light of judicial efficiency and economy to the separate adjudication of thousands of duplicative lawsuits.

## CLAIMS

### Count I: Declaratory and Injunctive Relief and Against All Defendants
### Fourth Amendment - Unlawful Seizure

49. Each of the foregoing paragraphs is incorporated as if fully restated herein.

50. The Fourth Amendment to the United States Constitution protects "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. Am. IV.

51. ICE's policy and its implementation violate the Fourth Amendment because ICE has retained Plaintiffs' documents and the documents of Plaintiffs' clients indefinitely, unreasonably, and without probable cause.

52. Instead, ICE has instituted a standard-less policy of discretion allowing it to retain the documents without meaningful review.

53. This renders the seizure unreasonable under the Fourth Amendment

54. As a direct result of this unconstitutional conduct, Plaintiffs have suffered damage, including a deprivation of benefits guaranteed under law.

9

### Count II: Monetary Relief Pursuant to *Bivens*
### Fourth Amendment - Unlawful Seizure

55. Each of the foregoing paragraphs is incorporated as if fully restated herein.

56. Plaintiffs bring this count against the John Doe Defendants in their personal capacity.

57. The John Doe Defendants have unlawfully retained Plaintiffs' documents and the documents of Plaintiffs' clients indefinitely, without probable cause.

58. In particular, Defendants have acted despite clearly established law that provides that indefinite seizures of lawfully held property violates the Fourth Amendment.

59. As a direct result of this unconstitutional conduct, Plaintiffs and other class members have suffered damages, including a loss of wages from being unauthorized to work and other physical, emotional, and economic harm.

### Count III: Declaratory and Injunctive Relief and Against All Defendants
### Pursuant to the Administrative Procedure Act

60. Each of the foregoing paragraphs is incorporated as if fully restated herein.

61. The Administrative Procedure Act ("APA") provides that "[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof." 5 U.S.C. § 702.

62. The APA permits the Court to review "[a]gency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court are subject to judicial review." 5 U.S.C. § 704.

63. ICE's decision to retain Plaintiffs' documents pursuant to the Memorandum is a final agency action because there is no avenue for further review of the decision.

64. Additionally, there is no adequate remedy to challenge the retention.

77200182v.8

65. Further, the decision to retain documents without a proper standard governing the agency conduct is arbitrary and capricious. Therefore, the conduct of ICE in retaining documents rightfully held by Plaintiffs and other class members violates the APA.

### Count IV: Declaratory and Injunctive Relief and Against All Defendants
### Fifth Amendment - Deprivation of Property Without Due Process of Law

66. Each of the foregoing paragraphs is incorporated as if fully restated herein.

67. The Fifth Amendment provides that "[n]o person shall . . . be deprived of life, liberty, or property, without due process of law." U.S. Const. Am. V.

68. ICE's policy and its implementation violate the Fifth Amendment because ICE has retained Plaintiffs' documents and the documents of Plaintiffs' clients indefinitely, without providing meaningful procedures (either pre- or post-deprivation) to allow for the return of these documents.

69. ICE's policy and implementation lacks such procedures, even when Plaintiffs and other class members are lawfully entitled to the seized documents.

70. Instead, ICE's standard-less policy of discretion allowing it to retain the documents without meaningful review of the seizure.

71. This renders the seizure in violation of the due process protections of the Fifth Amendment.

72. As a direct result of this unconstitutional conduct Plaintiffs and other class members have suffered damage, including a deprivation of benefits guaranteed under law.

WHEREFORE, Plaintiffs ask this Court to enter a judgment in their favor on all claims and award the following relief:

a. Certification of the classes described above;

b. A declaration that the Memorandum and its implementation violate Plaintiffs' and the classes' rights under the Fourth and Fifth Amendments and an injunction barring

11

77200182v.8

    Defendants from relying on it in determining whether to return Plaintiffs' and the classes' documents;

c.   A declaration that the Memorandum and its implementation are arbitrary and capricious under the APA and an injunction setting aside the Memorandum;

d.   An injunction directing Defendants to return Plaintiffs' and the classes' documents held unlawfully in violation of the Fourth and Fifth Amendments and pursuant to arbitrary and capricious action;

e.   Compensatory damages for the deprivation of property and damages caused by the Defendants' violations of Plaintiffs' and the classes' Fourth Amendment rights;

f.   Punitive damages to sanction the Defendants' knowing violation of the Fourth Amendment and to deter others from engaging in similar conduct;

g.   Any other relief which this Court may deem just and proper.

## JURY DEMAND

Plaintiffs request a trial by jury of all claims so triable.

**DATED: February 11, 2022**　　　　　　　Respectfully submitted,

                                                    J.T.M.
                                                  CHILDREN'S LEGAL CENTER

                                                  By: /s/ *Ian H. Morrison*
                                                      One of Their Attorneys

Ian H. Morrison
Jules A. Levenson
Ala Salameh
SEYFARTH SHAW LLP
233 S. Wacker Drive, Suite 8000
Chicago, Illinois 60606
Telephone:   (312) 460-5000
Facsimile:    (312) 460-7000
*Attorneys for Plaintiffs*

77200182v.8