**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **J.T.M., Children's Legal Center, on behalf of themselves and all others similarly situated,** | ) | |
| | ) | |
| | ) | **Case No. 1:22-cv-00774** |
| **Plaintiffs,** | ) | |
| | ) | **Judge John Z. Lee** |
| **vs.** | ) | |
| | ) | |
| **Alejandro Mayorkas, Secretary of Homeland Security; Tae D. Johnson, Acting Director U.S. Immigration and Customs Enforcement; John Does 1-10.** | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |
| **Defendants.** | ) | |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS**
**PURSUANT TO FED. R. CIV. P. 12(b)(1) and 12(b)(6)**

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ........................................................................................................ iii

INTRODUCTION ...................................................................................................................... 1

BACKGROUND ........................................................................................................................ 1

STANDARD OF REVIEW ........................................................................................................ 4

ARGUMENT .............................................................................................................................. 5

I.    Plaintiffs' APA challenge to the Torres Memo is time-barred by the statute of limitations and fails to state a claim upon which relief can be granted ............................................................. 5

II.    The organizational Plaintiff, CLC, lacks standing ............................................................. 8

III.    Plaintiffs Fourth Amendment Due Process Claim under Count I should be dismissed under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted ........................................................................................................................... 10

IV.    Plaintiffs' Fifth Amendment Due Process claim under Count IV should be dismissed under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted ........................................................................................................................... 13

V.    Plaintiffs' Bivens claim fails to state a claim upon which relief can be granted .................. 17

CONCLUSION ........................................................................................................................... 22

## **TABLE OF AUTHORITIES**

**Cases**

*Allen v. Wright,*
  468 U.S. 737 (1984) ........................................................................................... 9

*Armstrong v. Manzo*,
  380 U.S. 545 (1965) ..........................................................................................13

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ...................................................................................4, 5, 15

*Bd. of Regents v. Roth*,
  408 U.S. 564 (1972) ..........................................................................................13

*Belcher v. Norton*,
  497 F.3d 742 (7th Cir. 2007)..............................................................................16

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544 (2007) ........................................................................................... 4

*Berrum v. United States*,
  2003 WL 1869248 (N.D. Ill. Apr. 9, 2003) .................................................12, 14, 15

*Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*,
  403 U.S. 388 (1971) ...................................................................................passim

*Black Earth Meat Mkt., LLC v. Village of Black Earth*,
  834 F.3d 841 (7th Cir. 2016)..............................................................................15

*Blanche v. United States*,
  811 F.3d 953 (7th Cir. 2016)............................................................................... 6

*Brewster v. Bd. of Educ. of Lynwood Unified Sch. Dist.*,
  149 F.3d 971 (9th Cir. 1998)..............................................................................13

*Carlson v. Green*,
  446 U.S. 14 (1980) ............................................................................................19

*Chapter, Associated Gen. Contractors of America v. Jacksonville*,
  508 U.S. 656 (1993) ........................................................................................... 9

*Corr. Servs. Corp. v. Malesko*,
  534 U.S. 61 (2001) .......................................................................................18, 19

*Cty. of Sacramento v. Lewis*,
  523 U.S. 833 (1998) ..........................................................................................16

*Davis v. Passman,*
   442 U.S. 228 (1979) ................................................................................................19

*Doe v. Meron,*
   929 F.3d 153 (4th Cir. 2019)....................................................................................21

*Dunn–McCampbell Royalty Interest, Inc. v. National Park Serv.,*
   112 F.3d 1283 (5th Cir.1997)..................................................................................... 5

*Dusanek v. Hannon,*
   677 F.2d 538 (7th Cir. 1982).....................................................................................14

*Easter House v. Felder,*
   910 F.2d 1387 (7th Cir. 1990)...................................................................................14

*Eli Lilly & Co. v. United States Dep't of Health & Hum. Servs.,*
   2021 WL 5039566 (S.D. Ind. Oct. 29, 2021) ............................................................ 7

*Erickson v. Pardus,*
   551 U.S. 89 (2007)....................................................................................................18

*Esieke v. United States,*
   1993 WL 184153 (E.D.N.Y. May 19, 1993) .............................................................11

*Ezekiel v. Michel,*
   66 F.3d 894 (7th Cir. 1995) ....................................................................................... 4

*GEFT Outdoors, LLC v. City of Westfield,*
   922 F.3d 357 (7th Cir. 2019).....................................................................................16

*Gen. Auto Serv. Station v. City of Chicago,*
   526 F.3d 991 (7th Cir. 2008).....................................................................................16

*Gibson v. City of Chicago.,*
   910 F.2d 1510 (7th Cir. 1990).................................................................................... 4

*Goss v. Lopez,*
   419 U.S. 565 (1975) ..................................................................................................13

*Hamlin v. Vaudenberg,*
   95 F.3d 580 (7th Cir. 1996) .......................................................................................15

*Hernandez v. Mesa,*
   140 S. Ct. 735 (2020)...........................................................................................20, 21

*Hire Ord. Ltd. v. Marianos,*
   698 F.3d 168 (4th Cir. 2012)...................................................................................... 7

*Jersey Heights Neighborhood Ass'n v. Glendening,*
   174 F.3d 180 (4th Cir. 1999)...................................................................................... 5

iv

*Johnson v. Thompson-Smith*,
    203 F. Supp. 3d 895 (N.D. Ill. 2016) ............................................................................ 14

*Kerry v. Din*,
    576 U.S. 86 (2015) ...................................................................................................... 13

*Kokkonen v. Guardian Life Ins. Co. of Am.*,
    511 U.S. 375 (1994) ...................................................................................................... 4

*Lujan v. Defs. of Wildlife*,
    504 U.S. 555 (1992) .................................................................................................. 8, 9

*Macklin v. United States*,
    300 F.3d 814 (7th Cir. 2002) ........................................................................................ 5

*MainStreet Org. of Realtors v. Calumet City, Ill.*,
    505 F.3d 742 (7th Cir. 2007) .................................................................................... 9, 10

*Matter of Chicago, Rock Island & Pacific R.R. Co.*,
    794 F.2d 1182 (7th Cir. 1986) ...................................................................................... 4

*Matushkina v. Nielsen*,
    877 F.3d 289 (7th Cir. 2017) ........................................................................................ 5

*Milwaukee Police Ass'n v. Bd. of Fire & Police Com'rs of City of Milwaukee*,
    708 F.3d 921 (7th Cir. 2013) ........................................................................................ 9

*Norton v. Southern Utah Wilderness Alliance*,
    542 U.S. 55 (2004) ...................................................................................................... 8

*Onwubiko v. United States*,
    969 F.2d 1392 (2d Cir.1992) ................................................................................. passim

*Ping v. United States*,
    130 U.S. 581 (1889) .................................................................................................. 12

*Pro's Sports Bar & Grill, Inc. v. City of Country Club Hills*,
    589 F.3d 865 (7th Cir. 2009) ...................................................................................... 13

*Religion Found., Inc. v. Nicholson*,
    536 F.3d 730 (7th Cir. 2008) ........................................................................................ 8

*Reno v. Flores*,
    507 U.S. 292 (1993) .................................................................................................. 16

*Reynolds v. CB Sports Bar, Inc.*,
    623 F.3d 1143 (7th Cir. 2010) ...................................................................................... 4

*Sidney Hillman Health Ctr. of Rochester v. Abbott Labs., Inc.*,
    782 F.3d 922 (7th Cir. 2015) ........................................................................................ 6

*Sierra Club v. Slater*,
  120 F.3d 623 (6th Cir. 1997) ............................................................................................. 5

*Teamsters Nat'l Auto. Transporters Indus. Negotiating Comm. v. Troha*,
  328 F.3d 325 (7th Cir. 2003) ............................................................................................. 4

*Terry v. Ohio*,
  392 U.S. 1 (1968) ....................................................................................................... 11, 12

*Thye v. United States*,
  1996 WL 575941 (E.D.N.Y. Oct. 2, 1996) ..................................................................... 11

*United Phosphorous, Ltd. v. Angus Chem. Co.*,
  322 F.3d 942 (7th Cir. 2003) ............................................................................................. 4

*United States v. Al-Nigrish*,
  2019 WL 1271037 (E.D. Mich. Jan. 29, 2019) ............................................................... 11

*United States v. Brignoni-Ponce*,
  422 U.S. 873 (1975) ......................................................................................................... 11

*United States v. Jacobsen*,
  466 U.S. 109 (1984) ......................................................................................................... 11

*United States v. Kouwenhoven*,
  602 F.2d 234 (9th Cir. 1979) ........................................................................................... 11

*United States v. Martinez-Fuerte*,
  428 U.S. 543 (1976) ......................................................................................................... 11

*United States v. Moussa*,
  1993 WL 42179 (E.D.N.Y. Feb. 10, 1993) ..................................................................... 11

*Vance v. Rumsfeld*,
  701 F.3d 193 (7th Cir. 2012) ........................................................................................... 20

*Warth v. Seldin*,
  422 U.S. 490 (1975) ..................................................................................................... 9, 10

*Washington v. Glucksberg*,
  521 U.S. 702 (1997) ......................................................................................................... 16

*Wilkinson v. Austin*,
  545 U.S. 209 (2005) ......................................................................................................... 13

*Wind River Min. Corp. v. United States*,
  946 F.2d 710 (9th Cir. 1991) ..................................................................................... 5, 6, 8

*Ziglar v. Abbasi*,
  137 S. Ct. 1843 (2017); ........................................................................................ 19, 20, 21

**Statutes**

5 U.S.C. § 704 ................................................................................................................. 5

28 U.S.C. § 2401(a) ......................................................................................................... 5

**Rules**

Fed. R. Civ. P. 8 .............................................................................................................. 7

Fed. R. Civ. P.. 12(b)(1) ............................................................................................. 1, 5

Fed. R. Civ. P. 12(h)(3) ................................................................................................... 5

Fed. R. Civ. P. 12(b)(6) .......................................................................................... passim

**INTRODUCTION**

This is a putative class action immigration case filed by one unnamed plaintiff – J.T.M. – and one organization plaintiff – the Children's Legal Center ("CLC") (collectively "Plaintiffs"). ECF No. 1, at 1. Plaintiffs allege violations of the Fourth and Fifth Amendment of the U.S. Constitution, the Administrative Procedure Act, and they seek monetary relief under *Bivens*. *Id.* Specifically, Plaintiffs challenge a July 2006 memorandum from John Torres, the then-Acting Director of the Office of Detention and Removal Operations[1] ("DRO") within Immigration and Customs Enforcement ("ICE"), entitled "Confiscation and Return of Original Documents" ("Torres Memo"). ECF No. 1 at 3.

The Court should dismiss all of Plaintiffs' claims because: (1) Plaintiffs' challenge to the 2006 Torres Memo is time-barred by the statute of limitations and fails to state a claim on which relief can be granted; (2) the organizational Plaintiff lacks standing; (3) the Fourth Amendment Due Process Claim fails to state a claim upon which relief can be granted; (4) the Fifth Amendment Claim, classified as either a substantive or procedure violation, fails to state a claim on which relief can be granted; and (5) Plaintiffs fail to assert a viable *Bivens* claim against John Does 1-10.

**BACKGROUND**

On July 14, 2006, John Torres, the then-Acting Director of DRO, issued the Torres Memo. It described the way DRO should handle noncitizens' documents when those noncitizens were in removal proceedings. ECF No. 1-1 at 1. The Memo noted that upon initiating removal proceedings, DRO will generally confiscate any identity documents possessed or submitted by the noncitizen subject to the proceedings. *Id*. It also described the

---

[1] The Office of Detention and Removal has subsequently been renamed The Office of Enforcement and Removal Operations.

process for returning documents, stating that DRO officers should decide whether to do so on a case-by-case basis, taking into consideration ICE's operational and evidentiary needs. *Id.*

The Torres Memo provides general factors for an officer to consider when determining whether to confiscate documents. These factors balance the noncitizen's legal right and need to possess the documents with ICE's operational need to retain them. *Id.* The Memo provides guidance to officers about whether to retain or return documents possessed by noncitizen in specific situations; for example, I-551 cards (i.e., "green cards") possessed by lawful permanent residents encountered for removal proceedings and documents possessed by noncitizens unlawfully present in the United States encountered for such proceedings. *Id.* The Memo further discusses whether officers should confiscate or return a noncitizen's documents where the documents may be fraudulent or the noncitizen's case may be presented for criminal prosecution. Ultimately, the Memo directs officers to discuss any questions about the confiscation of documents with either a supervisor or the Office of the Principal Legal Advisor (formerly, Office of the Chief Counsel). *Id.* The July 2006 Torres Memo was subsequently superseded by an August 2006 revision of the memo, attached herein as Exhibit A.[2] The August 2006 Torres Memo remains the operative guidance on ICE's policy regarding the retention of a noncitizen's government issued documents.

Sixteen years after the Torres Memo was issued, Plaintiffs filed this complaint alleging that it violates the Fourth and Fifth Amendment of the Constitution and the Administrative Procedure Act. ECF No. 1, at 1. Their complaint also seeks monetary compensation from individual ICE agents or officers pursuant to *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388, 397 (1971).

---

[2] Defendants shall refer to both iterations of the memo collectively as the Torres Memo, as differences between them are not significant to this litigation.

In the Complaint, Plaintiffs state that the Torres Memo initially "played little role in removal proceedings, as ICE generally returned the identification documents to non-detained individuals, either of its own accord or upon request." ECF No. 1 at 4. It further alleges that in or about 2018 or 2019, ICE began to strictly follow the Torres Memo and began to illegally confiscate documents. *Id.*

Plaintiffs' Complaint further alleges that on April 30, 2019, a CLC client (a citizen of Honduras) and her family entered the United States, and, in the process of being inspected by immigration officers, had their birth certificates and consular ID confiscated by ICE. *Id.* at 5. The Complaint alleges that this confiscation led to difficulties in the unnamed Honduran client obtaining work authorization and required CLC to expend additional efforts and hire a social worker. *Id.* Plaintiffs have declined, despite requests from the Defendants, to identify this unnamed Honduran CLC client. Defendants are thus unable to verify any of the claims regarding that person.

The Complaint identifies only one other individual it claims was harmed by the Torres Memo. It alleges that J.T.M. entered the United States with his family on September 26, 2019. *Id.* at 6. It also states that during inspection by immigration officials, the birth certificate and consular identification of J.T.M. were confiscated by "unknown agents or contractors" of ICE. *Id.* Plaintiffs claim this caused significant issues in completing J.T.M.'s immigration applications and caused him other difficulties in his life. *Id.* at 6-7.

Plaintiffs further contend that there are other unspecified persons with whom CLC works that experienced similar issues related to document confiscation, and this required CLC to expend additional resources. *Id.* at 7. They thus seek class certification for the Complaint. *Id.*

## STANDARD OF REVIEW

A motion to dismiss brought pursuant to Federal Rule of Civil Procedure 12(b)(1) addresses the court's subject-matter jurisdiction. The court is required to dismiss the action whenever it appears that the court lacks subject-matter jurisdiction. Fed. R. Civ. P. 12(h)(3). "The burden of proof on a 12(b)(1) issue is on the party asserting jurisdiction." *United Phosphorous, Ltd. v. Angus Chem. Co.*, 322 F.3d 942, 946 (7th Cir. 2003) (*en banc*).  In considering the motion, a court may consider evidence outside the pleadings to resolve factual issues related to jurisdiction.  *Id.*; *Ezekiel v. Michel*, 66 F.3d 894, 897 (7th Cir. 1995).

Federal courts have limited jurisdiction, and they may exercise that jurisdiction only where it is specifically authorized by federal statute. *See* Fed. R. Civ. P. 12(b)(1); *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994); *Matter of Chicago, Rock Island & Pacific R.R. Co.*, 794 F.2d 1182, 1188 (7th Cir. 1986) ("[J]urisdiction is the power to decide. It must be conferred, not assumed."). A lack of jurisdiction is presumed until the party asserting jurisdiction proves otherwise. *Kokkonen*, 511 U.S. at 377; *Teamsters Nat'l Auto. Transporters Indus. Negotiating Comm. v. Troha*, 328 F.3d 325, 327 (7th Cir. 2003).

Additionally, a party may move to dismiss for failure to state a claim upon which relief may be granted pursuant to Federal Rule of Civil Procedure 12(b)(6).  *Gibson v. City of Chicago.*, 910 F.2d 1510, 1520 (7th Cir. 1990). In deciding a Rule 12(b)(6) motion, the court assumes that all the factual allegations in the complaint are true and construes them in the light most favorable to the non-moving party. *See Reynolds v. CB Sports Bar, Inc.*, 623 F.3d 1143, 1146 (7th Cir. 2010).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). While a plaintiff need not plead "detailed factual allegations" to survive a motion to dismiss, he

4

must provide more than mere "labels and conclusions or a formulaic recitation of the elements of a cause of action." *Iqbal*, 556 U.S. at 678 (internal quotation marks omitted); Fed. R. Civ. P. 8.

## ARGUMENT

I.  **Plaintiffs' APA challenge to the Torres Memo is time-barred by the statute of limitations and fails to state a claim upon which relief can be granted**

28 U.S.C. § 2401(a) provides that "every civil action commenced against the United States shall be barred unless the complaint is filed within six years after the right of action first accrues." This statute of limitations applies to actions brought under the APA. *Macklin v. United States,* 300 F.3d 814, 818 (7th Cir. 2002); *Jersey Heights Neighborhood Ass'n v. Glendening*, 174 F.3d 180, 186 (4th Cir. 1999); *Dunn–McCampbell Royalty Interest, Inc. v. National Park Serv.,* 112 F.3d 1283, 1286–87 (5th Cir.1997). As the Fourth Circuit explained in *Jersey Heights*, the six-year statute of limitations begins to run "under the APA upon final agency action." 174 F.3d at 186; *Matushkina v. Nielsen,* 877 F.3d 289, 292 n.1 (7th Cir. 2017). Failure to sue the United States within the six-year limitations period applicable to suits under the APA "operates to deprive federal courts of jurisdiction." *Dunn-McCampbell*, 112 F.3d at 1287 (5th Cir. 1997); *Matushkina*, 877 F.3d at 292 n.1. Challenges to final agency action under 5 U.S.C. § 704 must be commenced within six years after the right of action first accrues and the right of action first accrues on the date of the final agency action. *Sierra Club v. Slater*, 120 F.3d 623, 630 (6th Cir. 1997); *Wind River Min. Corp. v. United States*, 946 F.2d 710, 715 (9th Cir. 1991) ("if the person wishes to bring a policy-based facial challenge to the government's decision, that [action] must be brought within six years of the decision." ).

Here, Plaintiffs challenge a July 2006 memorandum entitled "Confiscation and Return of Original Documents" issued by John Torres, then-Acting Director of DRO, which was subsequently superseded by an August 2006 memorandum also issued by then-Acting Director

Torres (collectively the "Torres Memo"). ECF No. 1, Complaint ("Comp.") at 10. The Complaint states that "ICE's decision to retain Plaintiffs' documents pursuant to the memorandum is a final agency action . . . ." *Id*. It also states that "the decision to retain documents without a proper standard governing the agency conduct is arbitrary and capricious." *Id*. Thus, even if Plaintiffs were to amend their Complaint to challenge the correct, operative memorandum, their challenge to the issuance of the August 2006 Torres Memo is barred because it was issued in 2006, which constitutes the relevant final agency action, and this suit was not filed until 2022, well outside the six-year statute of limitations period.

Moreover, equitable tolling of the statute of limitations is not appropriate in this case. In the Seventh Circuit, "[e]quitable tolling is granted sparingly only when extraordinary circumstances far beyond the litigant's control prevented timely filing." *Sidney Hillman Health Ctr. of Rochester v. Abbott Labs., Inc.*, 782 F.3d 922, 930 (7th Cir. 2015). Further, to receive the benefits of equitable tolling, the plaintiff bears the burden of showing diligent pursuit of the claim and "some extraordinary circumstances" prevented filing the complaint within the statute of limitations. *Blanche v. United States*, 811 F.3d 953, 962 (7th Cir. 2016).

Plaintiffs, in the Complaint, admit implementation and application of the Torres Memo policy began after its inception. Compl. at 18 ("In the first decade following the issuance of the Memorandum, it played *little* role in removal proceedings, as ICE *generally* returned identification documents to non-detained individuals, either of its own accord or upon request.") (emphasis added). Plaintiffs also make no representation in the Complaint of when they became aware of the memo or that they were not previously aware of the memo. Plaintiffs thus failed to show they have met the burden to demonstrate that they have diligently pursued the claim or that extraordinary circumstances prevented filing within statute of limitations period. Equitable tolling of the statute of limitations period is thus not warranted here.

6

*Eli Lilly & Co. v. United States Dep't of Health & Hum. Servs.*, No. 1:21-CV-00081, 2021 WL 5039566, at *13 (S.D. Ind. Oct. 29, 2021) is also instructive. There, the Court addressed Defendants' contention that Plaintiffs' challenge to an agency's recent advisory opinion was nothing more than "an untimely collateral attack on the agency's consistent, twenty-five-year statutory interpretation," and should therefore be dismissed on statute of limitations grounds. *Id*. In rejecting the argument, the Court reasoned that the advisory opinion issued new guidance and was not a simple restatement of the agency's 2010 guidance. It thus follows from the Court's reasoning that a simple attack on an aged policy that has not changed or been supplemented since August 2006 should be barred on statute of limitations grounds. Here, Plaintiffs make no argument that the Torres Memo has been changed or supplemented since 2006, and it is thus a simple attack on an aged policy that should be barred on statute of limitations grounds.

To the extent Plaintiffs contend they can bring such a challenge merely because they have recently become interested in or more affected by the Torres Memo, that claim is also unpersuasive. In *Hire Ord. Ltd. v. Marianos*, 698 F.3d 168, 170 (4th Cir. 2012), the Fourth Circuit addressed a Plaintiff's APA challenge to a government gun regulation. There, the Plaintiff company argued that the statute of limitations period restarted when the Plaintiff company became a federally licensed firearm dealer and thus become interested in the policy. *Id*. The Plaintiff company obtained their license well after issuance of the regulation and well outside the statute of limitations period. *Id*. The Fourth Circuit found that there was no case law to support such a challenge to an aged policy, and determined the claim was barred by the statute of limitations. *Id*. The rationale for such a decision is clear, as finding otherwise would render the statute of limitations useless because it would restart whenever anyone, anywhere became interested in or

affected by a government policy regardless of how long it has been in place.[3]

Accordingly, because the Torres Memo was issued in 2006 and Plaintiffs did not bring suit until 2022, their claim is barred by the six-year statute of limitations period. As such, this Court lacks jurisdiction to consider it.

Regardless, even if this Court were to find it has jurisdiction over Plaintiffs' APA claims, the claims themselves fail. To the extent that Plaintiffs request that this Court compel agency action they allege is unlawfully withheld or unreasonably delayed, the "only agency action that can be compelled under the APA is action legally required." *Norton v. Southern Utah Wilderness Alliance*, 542 U.S. 55, 65 (2004). As discussed *infra* in Sections III and IV, there was no action legally required by the agency. Plaintiffs have thus failed to raise an APA claim upon which relief can be granted.

## II.     **The organizational Plaintiff, CLC, lacks standing**

"All plaintiffs, including organizations, seeking to invoke federal jurisdiction must have standing." *Freedom from Religion Found., Inc. v. Nicholson*, 536 F.3d 730, 737 (7th Cir. 2008). The organizational plaintiff, CLC, lacks both representational and organizational standing in this case. Article III, Section 2 of the Constitution limits the subject-matter jurisdiction of this Court to certain "cases" and "controversies." The doctrine of standing "is an essential and unchanging part of the case-or-controversy requirement of Article III." *Lujan v. Defs. of Wildlife,* 504 U.S. 555, 560 (1992). At an "irreducible constitutional minimum," plaintiffs who bring suit in federal court must demonstrate the following three elements to establish their standing to seek the relief sought in their complaint:

---

[3] *But see Wind River Min. Corp. v. United States*, 946 F.2d 710, 715 (9th Cir. 1991) ("The government should not be permitted to avoid all challenges to its actions . . . because the agency took the action long before anyone discovered the true state of affairs.). Regardless, here, the reasoning of *Wind River* would not apply because Plaintiffs have not alleged in the Complaint that they were previously unaware of the policy.

> First, the plaintiff must have suffered an injury in fact — an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical. Second, there must be a causal connection between the injury and the conduct complained of — the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court. Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*Id.* at 560-61 (internal citations and quotation marks omitted). The party invoking the Court's jurisdiction bears the burden of establishing all three elements. *See, e.g., Northeastern Fla. Chapter, Associated Gen. Contractors of America v. Jacksonville*, 508 U.S. 656, 663 (1993).

Where, as here, the organizational plaintiff bases its claims on injury to third parties on whose behalf it claims to be acting, its burden on the issue of standing is "substantially more difficult." *Allen v. Wright,* 468 U.S. 737, 758 (1984); *see also Lujan*, 504 U.S. at 562; *Warth v. Seldin*, 422 U.S. 490, 505 (1975). Thus, organizations suing in a representational capacity face special scrutiny. *See Warth*, 422 U.S. at 500.

CLC has failed to show organizational standing. "To bring suit in its own right, an organization must itself satisfy the requirements of standing." *See Milwaukee Police Ass'n v. Bd.of Fire & Police Com'rs of City of Milwaukee*, 708 F.3d 921, 926 (7th Cir. 2013).

First, CLC has failed to show a concrete and particularized injury. To show an injury, a plaintiff must assert "some non[-]negligible . . . harm." *MainStreet Org. of Realtors v. Calumet City, Ill.*, 505 F.3d 742, 744 (7th Cir. 2007). CLC labels this injury as requiring that it expend additional resources to obtain documents and provide additional services absent those documents. ECF No. 1, at 5-7. However, Plaintiffs fail to explain explicitly how CLC's clients' lack of documents based on the policy application differed in a non-negligible way from the typical issues they face. Specifically, Plaintiffs do not claim in the Complaint that their clients, notwithstanding this policy, often possess valid, legal documents that they could utilize to apply for immigration benefits. For example, Plaintiffs state they had to hire a social worker in 2020

9

and 2021, but they are notably silent as to whether they have previously utilized a social worker. ECF 1, at 5. Plaintiffs have thus failed to meet their burden showing a non-negligible harm and overcome the special scrutiny standard.

CLC has also failed to show a causal connection between the agency's policy and any alleged injury. Though CLC makes sweeping claims about how it has been injured by this policy, it cites only two specific instances regarding J.T.M., and an unnamed individual from Honduras, to support any connection between the policy and any alleged injury. ECF No. 1, at 5-7. In regards to both individuals, Plaintiffs claim their identity documents and those of their children were confiscated, but did not claim that they asked that they be returned, let alone that the agency refused to return them. *Id*. The Torres Memo explicitly describes the process for when agents should return documents to noncitizens. Exhibit A at 2. There is thus nothing showing that the policy resulted in an injury that harmed either individual party, let alone any resulting harm along the causal chain to CLC. *See Muro v. Target Corp.*, 580 F.3d 485, 491 (7th Cir. 2009) ("An abstract interest in a matter never has been considered a sufficient basis for the maintenance of—or the continuation of—litigation in the federal courts."). CLC has thus failed to meet its burden to overcome the special scrutiny it faces to show standing as an organizational plaintiff. *See Warth*, 422 U.S. at 500.

III. **Plaintiffs Fourth Amendment Due Process Claim under Count I should be dismissed under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted**

In their Complaint, Plaintiffs allege that "ICE's policy and its implementation violate the Fourth Amendment because ICE has retained Plaintiffs' documents and the documents of Plaintiffs' clients indefinitely, unreasonably, and without probable cause." *See* Compl. ¶ 51. Plaintiff J.T.M. is currently in removal proceedings. *Id*. ¶ 9. All class allegations involve individual Plaintiffs in removal proceedings. *Id*. ¶ 9. Plaintiffs fail to state a claim upon relief can be granted

10

because they have failed to allege facts that demonstrate that there was an unreasonable seizure of Plaintiffs' identity documents.

The Fourth Amendment protects the "right of the people to be secure in their persons and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. A "seizure" of property occurs when "there is some meaningful interference with an individual's possessory interests in that property." *United States v. Jacobsen*, 466 U.S. 109, 111 (1984). The Fourth Amendment prohibits unreasonable seizures. *Id.* Therefore, once it is determined that a "seizure" has occurred, the question arises whether it is reasonable. *Id.* This requires balancing the public interest in effective law enforcement against the individual's interest in remaining free of arbitrary or oppressive governmental intrusions. *See, e.g., United States v. Martinez-Fuerte*, 428 U.S. 543, 555 (1976); *United States v. Brignoni-Ponce*, 422 U.S. 873, 878 (1975); *Terry v. Ohio*, 392 U.S. 1, 20-21 (1968).

Plaintiffs cannot plausibly allege an unreasonable seizure by retaining identity documents because the United States government has the right to retain documents used to effectuate removal from the United States. *Onwubiko v. United States,* 969 F.2d 1392, 1397 (2d Cir.1992) (agreeing that disposition of Onwubiko's passport must await the result of the pending exclusion proceedings); *Esieke v. United States*, No. CV-93-1367, 1993 WL 184153 (E.D.N.Y. May 19, 1993) (holding passport may be held during removal proceedings); *United States v. Al-Nigrish*, No. 05-80439, 2019 WL 1271037 (E.D. Mich. Jan. 29, 2019), *report and recommendation adopted in part*, No. 05-CR-80439, 2019 WL 1255489 (E.D. Mich. Mar. 19, 2019) (holding documents used to effectuate removal from the United States may be held by the US government); *Thye v. United States*, No. CV-96-3489 (RJD), 1996 WL 575941 *1 (E.D.N.Y. Oct. 2, 1996); *United States v. Moussa*, No. 91-CR-1261(SJ), 1993 WL 42179 *1 (E.D.N.Y. Feb. 10, 1993). *See also United States v. Kouwenhoven*, 602 F.2d 234, 236 (9th Cir. 1979). Furthermore, this Court has specifically

11

found that the U.S. government has the right retain identity documents while an alien is in removal proceedings. *Berrum v. United States*, No. 01-C-4384, 2003 WL 1869248 (N.D. Ill. Apr. 9, 2003) (finding it is proper for the government to provide Berrum's passport to the Immigration and Naturalization Service for use during deportation proceedings). Accordingly, Plaintiffs cannot plausibly allege an unreasonable seizure in the retention of identity documents needed to effectuate removal.

The government holds identity documents of individuals in removal proceedings for practical reasons, such as effectuating the removal of a noncitizen if that noncitizen is ordered removed. *Onwubiko*, 969 F.2d at 1397. The government also holds identity documents of noncitizens in removal proceedings to ascertain identity and in performing background checks, which implicate both criminal and national security considerations.  If the government did not, the alien would have the opportunity to hide or destroy identity documents to make removal difficult for the government. Passports and other identity documents are used to secure travel documents needed to effectuate the removal of noncitizens. *See* ECF No. 1-1, at 3. Furthermore, allowing noncitizens to hold identity documents while in removal proceedings gives them "the appearance of legitimacy and aids them in their effort to evade detection." *See id*. at 2. Thus, the holdings of the cases above would extend to passports and other documents such as consular ID and birth certificates because these documents are required for the government to enact its powers to exclude noncitizens from the country. *Ping v. United States*, 130 U.S. 581, 603-604 (1889).

Accordingly, Plaintiffs' unlawful seizure claim fails to state a claim under the Fourth Amendment upon which relief can be granted. As Plaintiffs' due process claim fails to state claim upon which relief can be granted, the Court should dismiss Count 1 of the Complaint for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6).

IV. **Plaintiffs' Fifth Amendment Due Process claim under Count IV should be dismissed under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted**

Plaintiffs in their Complaint allege "ICE's policy and its implementation violate the Fifth Amendment because ICE has retained Plaintiffs' documents and the documents of Plaintiffs' clients indefinitely, without providing meaningful procedures (either pre- or post-deprivation) to allow for the return of these documents." *See* Compl. ¶ 68. While Plaintiffs do not allege whether they are asserting a substantive or procedural due process claim, their claim fails on either ground.

The Fifth Amendment provides that "[n]o person shall ... be deprived of life, liberty, or property, without due process of law[.]" U.S. Const. amend. V. "The base requirement of the Due Process Clause is that a person" deprived of a protected interest "be given an opportunity to be heard 'at a meaningful time and in a meaningful manner.' " *Brewster v. Bd. of Educ. of Lynwood Unified Sch. Dist.*, 149 F.3d 971, 984 (9th Cir. 1998) (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)). "[N]o process is due if one is not deprived of 'life, liberty, or property.' " *See Kerry v. Din*, 576 U.S. 86, 90 (2015).

Plaintiffs appear to assert a procedural due process claim. *See* Compl. ¶¶ 66-72. In determining whether a deprivation of procedural due process has taken place, we ask two questions: first, whether the plaintiff has been deprived of a protected liberty or property interest; second, if so, whether the deprivation occurred without due process. *Pro's Sports Bar & Grill, Inc. v. City of Country Club Hills*, 589 F.3d 865, 870 (7th Cir. 2009). "A liberty interest may arise from the Constitution itself, by reason of guarantees implicit in the word 'liberty,' or it may arise from an expectation or interest created by state laws or policies." *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005) (internal citations omitted). Protected property interests are normally not created by the Constitution; rather, they are created and defined by independent sources such as state statutes and rules entitling a citizen to certain benefits. *Goss v. Lopez*, 419 U.S. 565, 572-73 (1975) (citing *Bd.*

13

*of Regents v. Roth*, 408 U.S. 564, 577 (1972)). No liberty or property interest has been created to allow aliens to retain their identity documents while they are in removal proceedings. In fact, as discussed above, the Courts have found the exact opposite which is the government has authority to retain an alien's identity documents pending the resolution of removal proceedings. *Onwubiko*, 969 F.2d at 1398*; Berrum*, 2003 WL 1869248 at *1.

Furthermore, even if Plaintiffs sufficiently alleged a liberty or property interest in their Complaint, they have failed to sufficiently allege that the deprivation of a liberty or property interest was without due process of law. A plaintiff bringing a procedural due process claim must allege and prove that he availed himself of post-deprivation remedies or that the available remedies were inadequate. *Johnson v. Thompson-Smith*, 203 F. Supp. 3d 895, 906 (N.D. Ill. 2016), aff'd, 700 F. App'x 535 (7th Cir. 2017). A post-deprivation remedy is all the law requires. *Id.* at 907. The Torres Memo has a procedural process to allow for non-citizens to request the return of any confiscated document. *See* ECF No. 1-1. Plaintiffs do not allege that they requested the return of any confiscated document, so they cannot plausibly allege they availed themselves of post-deprivation remedies. Because Plaintiffs did not allege they availed themselves to process under the Torres Memo they cannot state a claim alleging the process inadequate. *See Dusanek v. Hannon*, 677 F.2d 538, 543 (7th Cir. 1982) (a state cannot be held to have violated due process requirements when it has made procedural protection available and the plaintiff has simply refused to avail herself of them).

Even if Plaintiffs alleged they availed themselves to the processes available in the Torres Memo, they fail to state a claim. To allege an inadequate post-deprivation remedy, Plaintiffs must plausibly allege that the post-deprivation remedies available are "meaningless" or "nonexistent." *Easter House v. Felder*, 910 F.2d 1387, 1406 (7th Cir. 1990). Plaintiffs allege that the policy is "standard-less" and "without meaningful" review. *See* Compl. ¶ 70. However, these allegations are

14

mere "conclusions and labels" that have been deemed insufficient by the Supreme Court. *Iqbal*, 556 U.S. at 678. The Complaint does not allege with any detail how the policy is "standard-less" and "without meaningful" review. *Id.* ¶ 68-70. In fact, the Torres Memo attached to the Complaint shows otherwise. ECF No. 1-1. The Torres Memo describes a process where officers on a case by case using several factors determine if an identity document can be returned to the noncitizen. *Id.* Those factors are whether the noncitizen is legally entitled to possess the document, the noncitizen has a legitimate need for the document, and whether ICE has an operational need to retain the document. *Id.* This is hardly a meaningless process. The Torres Memo allows for noncitizens to request the return of their documents and the actual return of the documents if the factors demonstrate the documents should be returned. *Id.* In *Hamlin v. Vaudenberg,* the Seventh Circuit found that an inmate complaint review system offered meaningful due process when the inmate complaint review system allowed for review of the liberty deprivation and relief from the liberty deprivations. *See Hamlin v. Vaudenberg,* 95 F.3d 580, 585 (7th Cir. 1996). The Torres Memo like the inmate complaint review system in *Hamlin* allows for a noncitizen to request the return of the documents (ask for review of property deprivation) and the actual return if warranted (relief of property deprivation). Therefore, the post-deprivation process offered by the Torres Memo is constitutionally adequate.

To survive a motion to dismiss for failure to state a claim, Plaintiffs must allege that the defendants deprived them of a valid liberty or property interest without adhering to the basic procedural obligations required by the Due Process Clause. *Black Earth Meat Mkt., LLC v. Village of Black Earth*, 834 F.3d 841, 848–49 (7th Cir. 2016). Plaintiffs have failed to sufficiently allege a liberty or property interest in their retaining identity documents while they are in removal proceedings, *see generally* Compl., and case law demonstrates that the government has a right to retain these documents during removal proceedings. *Onwubiko*, 969 F.2d at 1398*; Berrum*, 2003

WL 1869248 at *1. Lastly, Plaintiffs have failed to sufficiently allege a deprivation of a liberty or property interest was without the due process of law because they failed to allege that they requested the return of their property in accordance with the Torres Memo. Because they have failed to allege they availed themselves to the processes for the return of their property via the Torres Memo they cannot have violated Plaintiffs' procedural due process right. Accordingly, Plaintiffs' due process claim fails to state a procedural due process claim under the Fifth Amendment upon which relief can be granted.

Plaintiffs' due process claim also fails to state a substantive due process claim upon which relief can be granted. A substantive due process claim must allege that the government practice is arbitrary or irrational, bearing no relationship to a legitimate governmental interest. *See Gen. Auto Serv. Station v. City of Chicago*, 526 F.3d 991, 1000 (7th Cir. 2008). Substantive due process protects against only the most egregious and outrageous government action. *See Cty. of Sacramento v. Lewis,* 523 U.S. 833, 845 (1998); *Belcher v. Norton*, 497 F.3d 742, 753 (7th Cir. 2007). A necessary element of a substantive due process claim, however, is the "intrusion upon a cognizable property interest." *Id*. at 1002. The lack of a property interest is thus "fatal" to this type of claim. *Id*. "'Substantive due process' analysis must begin with a careful description of the asserted right[.]" *Reno v. Flores*, 507 U.S. 292, 302 (1993).

Plaintiffs' due process claim fails to identify a government deprivation of life, liberty, or property, and does not allege conduct that "shock[s] the conscience." *See* Compl. ¶¶ 66-72; *GEFT Outdoors, LLC v. City of Westfield*, 922 F.3d 357, 368 (7th Cir. 2019) (dismissing substantive due process claim for insufficiently alleging conduct that "shocks the conscience"). Moreover, because the government has the right to retain a noncitizen's identity documents while they are in removal proceedings, Plaintiff cannot identify a government deprivation of a fundamental right. *See Washington v. Glucksberg,* 521 U.S. 702, 720 (1997) (stating fundamental rights are deeply rooted

16

in our legal traditions). As courts have not found that there is no right to retain identity documents while in removal proceedings, there is "no fundamental right deeply rooted in our legal traditions" to support a valid due process claim here.

Furthermore, the government has legitimate governmental interest in retaining identity documents while a noncitizen is in removal proceedings. In *Onwubiko,* the Court accepted the government's assertion that "[p]ractically speaking, the government must retain the passport until exclusion proceedings are concluded so that, if Onwubiko is excluded, he will be able to be returned to his place of origin" in finding that the government had an interest in retaining identity documents while a noncitizen is in removal proceedings. 969 F.2d at 1397. Thus, the government holds identity documents of individuals in removal proceedings for practical reasons: so that the government can effectuate the removal of a noncitizen if the noncitizen is ordered removed. *Id.* If the government did not retain the documents, the noncitizen would have the opportunity to hide or destroy identity documents to make removal difficult for the government.

Accordingly, Plaintiffs' due process claim fails to state a substantive due process claim under the Fifth Amendment upon which relief can be granted. As Plaintiffs' due process claim fails to state either a procedural or substantive due process claim upon which relief can be granted, the Court should dismiss Count 4 of the Complaint for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6).

## V.    **Plaintiffs' Bivens claim fails to state a claim upon which relief can be granted**

Count II of Plaintiffs' complaint seeks monetary relief, pursuant to *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388, 397 (1971), against ICE agents or officers, John Does 1-10. They raise this claim against the John Doe defendants in their personal capacity, claiming that these defendants violated the Fourth Amendment by "unlawfully retain[ing] Plaintiffs' documents and the documents of Plaintiffs' clients indefinitely and without probable

17

cause." Compl. at ¶ 57. Plaintiffs' *Bivens* count should be dismissed, however, because the complaint fails state a viable claim against the John Doe defendants.

The complaint alleges that Plaintiff J.T.M. entered the United States at the El Paso, Texas Port of Entry on September 26, 2019, and that at that time, unknown agents or contractors of ICE confiscated his birth certificate and consular identification.[4] Compl. ¶ 30. Plaintiffs further allege that because of having these documents confiscated, J.T.M. experienced additional delays and hurdles in obtaining authorization to work in the United States. Compl. ¶¶ 32-36.

The complaint also maintains that the Torres Memo states that "when individuals are placed in removal proceedings, ICE typically confiscates identification documents. Additionally, it sets forth guidelines to determine whether and when to return the documents." Compl. ¶ 14.  A copy of the Torres Memo is attached to the complaint. The complaint *does not* address whether J.T.M. made any request to ICE to have his identity documents returned to him, nor does it claim that ICE officers or agents violated the guidelines set out in the Torres Memo. Rather, the complaint broadly states that the John Doe defendants "unlawfully retained Plaintiffs' documents and the documents of Plaintiffs' clients indefinitely and without probable cause" in violation of the Fourth Amendment. Compl. ¶¶ 57-58.

A *Bivens* action is a judicially created remedy against federal officials for certain constitutional violations. *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388, 397 (1971). In *Bivens*, the Supreme Court "recognized for the first time an implied private right of action for damages against federal officers," *Corr. Servs. Corp. v. Malesko*, 534

---

[2] Defendants' references to Plaintiffs' asserted facts acknowledge that the Court must consider those facts in Plaintiffs' best light in determining a motion to dismiss. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).  Those references do not, however, constitute a concession by the Defendants that those facts are accurate, including any concession that it was ICE who originally confiscated Plaintiffs' documents.

U.S. 61, 66 (2001), based on a claimed Fourth Amendment violation committed by federal agents who allegedly entered and searched the plaintiff's apartment and then arrested him without a warrant. *Bivens*, 403 U.S. at 389, 397. Since that case was decided, however, the Supreme Court has extended the *Bivens* remedy only twice. *Davis v. Passman*, 442 U.S. 228 (1979) (holding that an administrative assistant fired by a congressman had a *Bivens* remedy for her Fifth Amendment gender discrimination claim); *Carlson v. Green*, 446 U.S. 14 (1980) (holding that a prisoner's estate had a *Bivens* remedy against federal jailers for deliberate indifference to necessary medical care where they failed to provide an inhaler for a serious asthma condition resulting in his death).

The violation alleged against the John Doe defendants in the complaint does not fit into any of these categories. Plaintiffs here are alleging a different type of Fourth Amendment claim than the one at issue in *Bivens*. *Bivens* did not involve the confiscation of identity documents for foreign nationals in removal proceedings in compliance with an agency memorandum. *Bivens* involved the physical invasion of someone's home. In *Bivens*, six federal law enforcement agents entered a home without a warrant and searched the premises. *See Bivens*, 403 U.S. at 389. The agents handcuffed Bivens in front of his wife and children and arrested him. *Id.* Later, the agents interrogated Bivens and subjected him to a visual strip search. *Id.* Conversely, in this case, plaintiff J.T.M. states that his documents were confiscated by immigration officials when was encountered at a port of entry to the United States. Importantly, neither J.T.M. nor the proposed class assert that officers confiscated their documents after a warrantless search of their *home*, an important distinction from *Bivens.*

Therefore, for Plaintiff to state a *Bivens* claim against the John Doe defendants, this court would have to extend *Bivens* liability to the circumstances of this case. *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1856–57 (2017) But the Supreme Court has not expanded *Bivens* to any new contexts in more than forty years. *Abbasi,* 137 S. Ct. at 1859-60; *Malesko*, 534 U.S. at 75 (Scalia, J.,

concurring) ("*Bivens* is a relic of the heady days in which this Court assumed common-law powers to create causes of action—decreeing them to be 'implied' by the mere existence of a statutory or constitutional prohibition. . . . [W]e have abandoned that power to invent 'implications.'"). In fact, a few years before *Abbasi*, the Seventh Circuit noted that the Supreme Court had "reversed more than a dozen appellate decisions" extending *Bivens*. *Vance v. Rumsfeld*, 701 F.3d 193, 198 (7th Cir. 2012) (en banc). The *Abassi* Court even suggested that *Bivens* and its progeny were wrongly decided, stating that "in light of the changes to the Court's general approach to recognizing implied damages remedies, it is possible that the analysis in the Court's three *Bivens* cases might have been different if they were decided today." *Abbasi*, 137 S. Ct. at 1856.

The Supreme Court has provided a strict two-step inquiry that must be performed when determining whether to allow a claim asserted under *Bivens* to proceed. *Hernandez v. Mesa*, 140 S. Ct. 735, 743 (2020). The first consideration in evaluating any *Bivens* claim today is whether the claim arises in a new context as compared to *Bivens*, *Davis*, or *Carlson*. *Abbasi*, 137 S. Ct. at 1859–60. That is, does the case involve a claim that arises in a new context or involves a new category of defendants. *Hernandez*, 140 S. Ct. at 743. If it does, "the Constitution's separation of powers requires [courts] to exercise caution" before allowing a *Bivens* remedy to proceed. *Id.* at 739. Second, the court must ask if there are any "special factors" counseling hesitation in expanding the *Bivens* remedy. *Abbasi*, 137 S. Ct. at 1858. This special-factors inquiry "must concentrate on whether the Judiciary is well suited, absent congressional action or instruction, to consider and weigh the costs and benefits of allowing a damages remedy to proceed." *Id.* at 1857–58. In other words, if there are sound reasons to think Congress might doubt the efficacy or necessity of a damages remedy as part of the system for enforcing the law and correcting a wrong, the court must refrain from creating a *Bivens* remedy. *Id.* at 1858.

The first step of determining whether the causes of action create a "new context" does not require an immense difference. It need only be "different in a meaningful way from [the three] previous *Bivens* cases." *Id*. at 1859. In *Abbasi*, the Court provided a non-exhaustive list of several possible meaningful differences.

> A case might differ in a meaningful way because of (1) the rank of the officers involved; (2) the constitutional right at issue; (3) the generality or specificity of the official action; (4) the extent of judicial guidance as to how an officer should respond to the problem or emergency to be confronted; (5) the statutory or other legal mandate under which the officer was operating; (6) the risk of disruptive intrusion by the Judiciary into the functioning of other branches; (7) or the presence of potential special factors that previous *Bivens* cases did not consider.

*Id*. at 1859–60. The Court has emphasized that its "understanding of a 'new context' is broad," and that the "new-context inquiry is easily satisfied." *Hernandez*, 140 S. Ct at 743; *Abbasi*, 137 S. Ct. at 1865. "[E]ven a modest extension is still an extension" for purposes of the new-context analysis. *Abbasi*, 137 S. Ct. at 1864. The claim against the John Doe defendants in this case has nothing to do with an illegal search of a residence. It is the retention of documents from individuals at a port of entry whose right to enter the United States is in question.

For the second step of determining whether special factors are present to counsel hesitation in expanding *Bivens*, special factors were not specifically defined, but relevant factors include "impact on governmental operations systemwide, the burdens on Government employees who are sued personally, the regulatory authority of Congress in a context, and the existence of an alternative remedial structure in a case." *Doe v. Meron*, 929 F.3d 153, 168 (4th Cir. 2019) (citing *Abbasi*, 137 S. Ct. 1843).

Here the plaintiffs are attempting to impose individual liability on government officers who are following a government policy. Plaintiffs do not take issue with the individual acts of the John Doe defendants; Plaintiffs' complaint appears to take issue with the policies set forth in a 2006 agency memorandum. Plaintiffs should (and are) litigating to change the policy, not to impose individual

liability on officers who are following the policy. That would dramatically expand officer liability and extend it to officers who are following facially valid governmental policies. In this context, there is simply no precedent for extending *Bivens* liability to federal agents or officers who follow agency policies. Plaintiffs' *Bivens* count should be dismissed because the Complaint fails state a viable claim against the John Doe defendants.

## **CONCLUSION**

Accordingly, the Court should dismiss all of Plaintiffs' claims because: (1) Plaintiffs' challenge to the 2006 Torres Memo is time-barred by the statute of limitations and fails to state a claim on which relief can be granted; (2) the organizational Plaintiff lacks standing; (3) the Fourth Amendment Due  Process Claim fails to state a claim upon which relief can be granted; (4)  the Fifth Amendment Claim, classified as either a substantive or procedure violation, fails to state a claim on which relief can be granted and; (5) Plaintiffs have failed to assert a viable *Bivens* claim against the John Doe defendants.

DATED:  April 25, 2022

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General
Civil Division

WILLIAM C. PEACHEY
Director

SAMUEL P. GO
Assistant Director

JAMES C. GRAULICH
Trial Attorney

s/ Jason Wisecup
JASON WISECUP
Trial Attorney
United States Department of Justice
Civil Division
Office of Immigration Litigation
District Court Section
P.O. Box 868, Ben Franklin Station
Washington, DC 20044
Telephone: (202) 451-7743
E-mail: jason.wisecup@usdoj.gov

Attorneys for Defendants Mayorkas and Johnson

JOHN R. LAUSCH, Jr.
United States Attorney

By: s/ Elizabeth I. Treacy
ELIZABETH I. TREACY
Assistant United States Attorney
219 South Dearborn Street
Chicago, Illinois 60604
(312) 886-7625
elizabeth.treacy@usdoj.gov

Attorney for John Doe Defendants

23