IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| J.T.M., Children's Legal Center, on behalf of themselves and all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br><br><br> Alejandro Mayorkas, Secretary of Homeland Security; Tae D. Johnson, Acting Director U.S. Immigration and Customs Enforcement; John Does 1-10. <br><br> Defendants. | Case No. 1:22-cv-00774 <br><br> The Honorable Judge John F. Kness <br> Magistrate Judge Jeffrey Cole |

**Plaintiffs' Response To Defendants' Motions For Leave to File Supplemental Authority**

Plaintiffs respectfully respond to Defendants' Motions for Leave to File Supplemental Authority (ECF No. 47, 48).

Plaintiffs do not oppose Defendant's Motions to the extent that they seek leave to cite supplemental authority. However, Plaintiffs disagree with Defendants' characterizations of the holdings and import of the cited cases.

Plaintiffs do not concur with Defendants' characterization of the U.S. Supreme Court's decisions in *FDA v. Alliance for Hippocratic Medicine*, 602 U.S. 367 (2024), and *Murthy v. Missouri*, 144 S. Ct. 1972 (2024). Defendants seek to apply *Alliance* and *Murthy* to deny standing to Plaintiff CLC, but Defendants' assertions overlook key allegations in Plaintiffs' Amended Complaint (ECF No. 24) and key distinctions between this case and the decisions in *Alliance* and *Murthy*.

In *Alliance*, certain advocacy organizations objected to the FDA's approval of the medication mifepristone. 602 U.S. at 394. The organizational plaintiffs did not prescribe or use mifepristone, but

argued that they had standing on the basis that the FDA's actions required them "to conduct their own studies on mifepristone" and create public advocacy and education campaigns on the drug's use. *Id.* The Supreme Court held that the organizational plaintiffs lacked standing because "an organization that has not suffered a concrete injury caused by a defendant's action cannot spend its way into standing simply by expending money to gather information and advocate against the defendant's action." *Id.* Importantly, the Supreme Court also held that the FDA's decisions as to mifepristone did not create direct interference with the organizations' advocacy business. *Id.* at 395.

Defendants argue that "as in *Alliance*, CLC offers a monetary/diversion of resources argument to show particularized injury" and that "such an argument lacks the necessary causation to establish standing." (ECF No. 47 at 2). Defendants seek to make this analogy by asserting that "CLC … has described its injury as requiring that it expend additional resources, such as hiring a social worker, to obtain documents and provide additional services absent those documents" and that "Plaintiffs also make a direct 'diversion of resources' argument." (ECF No. 47 at 2).

Defendants' arguments overlook that CLC is not voluntarily diverting resources to *advocate* against the document confiscation policy at issue in this case. Rather, the document confiscation policy directly interferes with CLC's core mission of "providing free legal services and representation to children [and their families] in the immigration process." (Am. Compl. ¶ 10); *see also Alliance*, 602 U.S. at 395 (explaining that prior case law has found standing for "actions [that] directly affected and interfered with … core business activities—not dissimilar to a retailer who sues a manufacturer for selling defective goods to the retailer"). It does so by requiring CLC to assist clients in replacing confiscated documents. CLC does not do so as a voluntary undertaking, but because it has a professional duty to help clients acquire or attempt to acquire the documents necessary for the legal proceedings in which CLC is providing representation. *See* Ill. Sup. Ct. R. Prof. Conduct 1.1 ("Competent representation requires … thoroughness and preparation reasonably necessary for the representation."), 1.3 ("A lawyer shall act with reasonable diligence … in representing a client."). The document confiscation policy thus interferes with CLC efficiently

processing cases, forces CLC to hire additional staff to assist clients in replacing necessary identification documents, and limits CLC's ability to serve new clients. (*See* ECF No. 38 at 23 quoting Am. Compl. ¶ 36 ("faced with increasingly frequent instances in which its clients' documents had been seized and had not been returned, CLC needed to hire a social worker to assist clients with obtaining documents" and "a significant portion of the social worker's time, as well as that of CLC staff attorneys' time has been spent helping clients make appointments with consulates and writing individualized client letters to the consulates to obtain appointments" regarding replacement of confiscated documents"), ¶¶ 37-38 ("CLC diverts resources to helping clients apply for new documents, including passports, from consulates" and "CLC's inability to retrieve client identification documents, and protracted delays in doing so, prevents CLC from closing existing matters or opening new cases")). Moreover, this injury would be immediately remedied by the cessation of the document confiscation policy and the prompt return of the confiscated documents, as CLC would no longer have to assist clients in replacing confiscated documents. Accordingly, there is a direct causal link between Defendants' document confiscation and retention practice and Plaintiff CLC's injuries, which establishes its standing to seek relief.

*Murthy* is inapposite for similar reasons. 144 S. Ct. at 1996 (plaintiffs did "not point to any specific instance of content moderation that caused them identifiable harm. They have therefore failed to establish an injury that is sufficiently 'concrete and particularized.'") (citation omitted). Defendants argue that "[j]ust as the plaintiffs in *Murthy* failed to demonstrate 'a substantial risk of future injury that is traceable to the Government defendants and likely to be redressed by an injunction,' the Organizational Plaintiff, CLC, has failed to allege facts to show that their alleged costs or injuries are caused by the agency's document handling policy." (ECF No. 47 at 2) (citation omitted). Defendants' argument that there is no connection between (1) their express policy of confiscating documents and (2) CLC incurring costs to help clients *replace the confiscated documents* is groundless. As explained above, if the government had not

3

confiscated the documents, CLC would not have to divert resources to help clients get replacements. *Murthy* is also distinguishable because (1) Defendants' document confiscation and retention policy directly impacts CLC's operations and (2) Defendants directly effectuate the policy (rather than using an intermediary as alleged in *Murthy*). Accordingly, there is a direct causal link between Defendants' document confiscation and retention policy and Plaintiff CLC's injuries alleged to seek relief.

Plaintiffs likewise do not agree with Defendants' characterizations of *Corner Post, Inc. v. Bd. of Governors of Fed. Rsrv. Sys.*, 144 S. Ct. 2440 (2024) or its impact on this case. (*See* ECF No. 45 (Plaintiffs' Notice of Supplemental Authority)). Defendants also raise two points that are not germane to their citation of *Corner Post* as supplemental authority. *First*, Defendants assert (ECF No. 48 at 2) that Plaintiffs' filings are not clear as to when CLC became aware of the Torres Memo or was injured by its enforcement. Defendants previously raised a similar point in their motion to dismiss reply (ECF No. 42 at 18), but any lack of clarity simply means that Defendants' limitations affirmative defense fails at the motion to dismiss stage. *Sidney Hillman Health Ctr. of Rochester v. Abbott Lab'ys, Inc.*, 782 F.3d 922, 928 (7th Cir. 2015) ("district court erred by dismissing … based on the statute of limitations without … discovery into when a reasonable benefit fund should have known about its injuries"). *Second*, Defendants assert (ECF No. 48 at 2) that Plaintiffs can only bring individual, not class, claims. However, *Corner Post*'s holding on the timing of claim accrual is irrelevant to the availability of class-wide relief.

**DATED: August 20, 2024**  Respectfully submitted,

J.T.M.
CHILDREN'S LEGAL CENTER

By: /s/ *Ian H. Morrison*
 One of Their Attorneys

4

Ian H. Morrison
Jules A. Levenson
Ala Salameh
SEYFARTH SHAW LLP
233 S. Wacker Drive, Suite 8000
Chicago, Illinois 60606
Telephone: (312) 460-5000
Facsimile: (312) 460-7000
*Attorneys for Plaintiffs*

5

## CERTIFICATE OF SERVICE

I hereby certify that on August 20, 2024, I electronically filed the foregoing with the Clerk of the Court using the ECF system, which will send notification of such filing to all parties of record.

_____/s/ Ian H. Morrison_____